# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued September 19, 2005      Decided January 20, 2006

No. 04-1286

COMMODITY CARRIERS, INC.,
PETITIONER

v.

FEDERAL MOTOR CARRIER SAFETY ADMINISTRATION,
RESPONDENT

On Petition for Review of an Order of the
Federal Motor Carrier Safety Administration

*Anthony J. McMahon* argued the cause for the petitioner.

*Mark S. Davies*, Attorney, United States Department of Justice, argued the cause for the respondent. *Peter D. Keisler*, Assistant Attorney General, and *Robert S. Greenspan*, Attorney, United States Department of Justice, and *Jeffrey A. Rosen*, General Counsel, *Brigham A. McCown*, Chief Counsel, and *Cheryl J. Walker*, Attorney, United States Department of Transportation, were on brief. *August E. Flentje*, Attorney, United States Department of Justice, entered an appearance.

Before: HENDERSON, GARLAND and GRIFFITH, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: Commodity Carriers, Inc. (CCI) petitions for review of an order of the Federal Motor Carrier Safety Administration (FMCSA), an agency within the United States Department of Transportation (Department). In the order the FMCSA assigned CCI a "conditional" safety rating based on CCI's failure to obtain and retain the toll receipts of its independently-contracted drivers who own and operate their own trucks. CCI challenges the FMCSA's order primarily on the ground that the FMCSA was required and failed to engage in notice and comment rulemaking before mandating that such owner operators maintain toll receipts. For the reasons set out below, we conclude that notice and comment was not necessary. We further conclude the FMCSA was not constrained from enforcing the toll receipt requirement based on issue preclusion and that the requirement is not arbitrary and capricious.

## I.

The Congress has directed the Department to establish by regulation a procedure to "determine whether an owner or operator is fit to operate safely commercial motor vehicles." 49 U.S.C. § 31144(a)(1), (b)(1).[1] Among its specific statutory duties, the Department is to "prescribe requirements for . . . maximum hours of service of employees of . . . a motor private

---

[1] Owner operators "are usually not licensed as motor carriers" but "perform services under contract to licensed carriers." Study of Interstate Commerce Commission Regulatory Responsibilities Pursuant to Section 210(a) of the Trucking Industry Regulatory Reform Act of 1994, 1994 WL 639996, at *52. They "lease their equipment with themselves as drivers to trucking companies on an individual trip or longer-term basis" and "supply equipment (their trucks) and skilled drivers (themselves) to motor carriers who would otherwise have to make the capital investment and bear employment costs themselves." *Id*.

carrier." *Id*. § 31502(b)(2). Pursuant to its delegated authority under 49 C.F.R. § 1.73, the FMCSA has promulgated regulations governing hours of service, which regulations set limits on the number of consecutive hours a driver may operate, *id*. § 395.3, and direct that "every motor carrier shall require every driver used by the motor carrier to record his/her duty status for each 24 hour period," *id*. § 395.8(a). The regulations further require each motor carrier to maintain "records of duty status"—commonly known as logs—"and all supporting documents for each driver it employs for a period of six months." *Id*. § 395.8(k)(1).

To enforce its safety regulations the FMCSA has established a procedure under which it conducts a "compliance review" of a particular carrier,[2] that is, an "on-site examination of motor carrier operations," including, *inter alia*, "drivers' hours of service." *Id*. §§ 385.9(a), 385.3. Following the compliance review, the FMCSA assigns the motor carrier one of three alternative safety ratings, "satisfactory," "conditional" or "unsatisfactory," based on factors enumerated in the regulations. *Id*. §§ 385.9(a), 385.7.[3]

---

[2]"A compliance review may be conducted in response to a request to change a safety rating, to investigate potential violations of safety regulations by motor carriers, or to investigate complaints or other evidence of safety violations." 49 C.F.R. § 385.3.

[3]Section 385.7 provides as follows:

The factors to be considered in determining the safety fitness and assigning a safety rating include information from safety reviews, compliance reviews and any other data. The factors may include all or some of the following:

(a) Adequacy of safety management controls. The adequacy of controls may be questioned if their degree of formalization, automation, etc., is found to be

4

In November 2000 the FMCSA conducted a compliance review of CCI during which the FMCSA investigator examined the randomly selected logs of six company drivers and five owner operator drivers and discovered, from toll receipts CCI retained, that three of the six company drivers had falsified their log entries. When he inquired about toll receipts for the five owner operator drivers, the investigator was told CCI did not require that owner operator drivers furnish toll receipts. The

substantially below the norm for similar carriers. Violations, accidents or incidents substantially above the norm for similar carriers will be strong evidence that management controls are either inadequate or not functioning properly.

(b) Frequency and severity of regulatory violations.

(c) Frequency and severity of driver/vehicle regulatory violations identified in roadside inspections.

(d) Number and frequency of out-of-service driver/vehicle violations.

(e) Increase or decrease in similar types of regulatory violations discovered during safety or compliance reviews.

(f) Frequency of accidents; hazardous materials incidents; accident rate per million miles; preventable accident rate per million miles; and other accident indicators; and whether these accident and incident indicators have improved or deteriorated over time.

(g) The number and severity of violations of state safety rules, regulations, standards, and orders applicable to commercial motor vehicles and motor carrier safety that are compatible with Federal rules, regulations, standards, and orders.

49 C.F.R. § 385.7.

investigator recommended a conditional safety rating based on CCI's "failing to preserve driver's records of duty status supporting documents for 6 months," JA 9, asserting that, without the toll receipts, he was unable to verify the accuracy of the owner operators' logs.[4]

CCI petitioned for administrative review of the conditional safety rating. In a final decision dated June 30, 2004, the FMCSA Assistant Administrator denied the petition, rejecting CCI's contention that it was not required to maintain the toll receipts of owner operator drivers. Relying on our decision in *Darrell Andrews Trucking, Inc. v. FMCSA*, 296 F.3d 1120, 1125 (D.C. Cir. 2002), the Assistant Administrator first determined that toll receipts are among the "supporting documents" a carrier is required to maintain for "each driver it employs" under 49 C.F.R. § 395.8(k)(1). He then concluded that owner operator drivers are employees for whom such records must be kept because FMCSA regulation 390.5 expressly defines the term "employee" as "including an independent contractor while in the course of operating a commercial motor vehicle." On August 2, 2004 CCI petitioned for review of the final FMCSA decision.

## II.

CCI first challenges the FMCSA's interpretation of section 395.8(k)(1) to require a carrier to maintain drivers' toll receipts on the ground that no such requirement is expressly set forth in the regulations. CCI contends that, because the FMCSA failed to establish the toll receipt requirement through a formal rulemaking accompanied by public notice and an opportunity for comment, its applying the requirement to CCI violates both the

---

[4]The investigator reported that "there was no other accurate means of verifying those drivers' logs, such as on-board computers or other supporting documents showing a date, time and location." Decl. of Robert B. Woods ¶ 10.

Motor Carrier Safety Act and the Administrative Procedure Act. *See* 49 U.S.C. § 31144(b)(1) ("The Secretary shall maintain by regulation a procedure for determining the safety fitness of an owner or operator," including "[s]pecific initial and continuing requirements with which an owner or operator must comply to demonstrate safety fitness."); 5 U.S.C. § 553(c) ("After notice required by this section, the agency shall give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments with or without opportunity for oral presentation."); *see also Appalachian Power Co. v. EPA*, 208 F.3d 1015, 1024 (D.C. Cir. 2000) ("It is well-established that an agency may not escape the notice and comment requirements . . . by labeling a major substantive legal addition to a rule a mere interpretation."). Therefore, CCI argues, it cannot be assigned a conditional rating for failing to maintain toll receipts. We disagree.

CCI's challenge to the FMCSA's interpretation of section 395.8(k)(1) is foreclosed by our decision in *Darrell Andrews*. There, we upheld the interpretation, concluding that (1) it is a "reasonable construction" of the regulation, 296 F.3d at 1126, and that (2) the FMCSA had issued a "prior informal adjudication on this issue," which was "quite clear and completely in accord with" the interpretation, *id*. at 1127 (citing *In re Nat'l Retail Transp., Inc.*, No. R1-92-03 (FMCSA Sept. 12, 1996)). We had no occasion in *Darrell Andrews*, however, to address the FMCSA's extension of this interpretation to owner operator drivers and we therefore found inapposite the carrier's reliance on the FMCSA's decision in *Ace Doran Hauling & Rigging Co.* (FMCSA Feb. 24, 2000) (*Ace Doran I*), which changed the carrier's rating from conditional—assigned for failure to maintain owner operator toll receipts—to satisfactory. *See Darrell Andrews*, 296 F.3d at 1127 n.5. CCI asserts that *Ace Doran I* precludes the FMCSA from assigning a conditional rating in this proceeding. We reject this argument for the following reasons.

CCI contends *Ace Doran I* represents a "definitive interpretation" of section 395.8(k)(1) as not requiring a carrier to maintain owner operator toll receipts and that the FMCSA therefore could not permissibly revise the interpretation without notice and comment. *See Alaska Prof'l Hunters Ass'n, Inc. v. FAA*, 177 F.3d 1030, 1034 (D.C. Cir. 1999) ("When an agency has given its regulation a definitive interpretation, and later significantly revises that interpretation, the agency has in effect amended its rule, something it may not accomplish without notice and comment." (citing *Paralyzed Veterans of Am. v. D.C. Arena,* 117 F.3d 579, 586 (D.C. Cir. 1997)). We find this argument unpersuasive. First, we do not read *Ace Doran I* as offering *any* interpretation of section 395.8(k)(1), definitive or otherwise. That decision concluded the FMCSA had wrongly assigned Ace Doran a conditional rating because the carrier *"had reasonable grounds to believe* it was not required to collect and maintain toll receipts from its owner operator drivers" based on agency "guidance" documents. *Ace Doran I* at 15 (emphasis added). No opinion was given on the meaning of the regulation itself.[5] Moreover, the interpretation of section 95.8(k)(1) in *Ace Doran I* was not definitive; it was almost immediately contradicted by *Ace Doran Hauling & Rigging Co.* (FMCSA July 11, 2000) (*Ace Doran II*), in which the Acting Chief Safety Officer, citing the definition of "employee" in FMCSA's regulations, concluded that "Ace Doran had reasonable grounds to believe that it *was* required to maintain all supporting documents from its owner operator drivers." *Ace Doran II* at 12 (emphasis added).[6] Further, the interpretation

---

[5]For this reason, as well as because CCI was not a party to *Ace Doran I*, we reject CCI's contention that the doctrine of issue preclusion forecloses a conditional safety rating.

[6]The FMSCA subsequently issued a final order denying reconsideration and imposing a civil penalty on Ace Doran. *Ace*

CCI advances—that section 395.8(k)(1)'s requirement that carriers maintain drivers' toll receipts does not apply to owner operator drivers—is, as noted in both *Ace Doran II* and the FMSCA decision here, directly at odds with the express language of FMSCA regulations directing that a carrier maintain supporting materials "for each driver it *employs*," 49 C.F.R. § 395.8(k)(1), and defining an employee as "any individual, other than an employer, who is employed by an employer and who in the course of his or her employment directly affects commercial motor vehicle safety," expressly "including an independent contractor while in the course of operating a commercial motor vehicle," *id*. § 390.5.[7]

---

*Doran Hauling & Rigging Co.* (FMCSA Feb. 8, 2000) (*Ace Doran III*). This order was vacated on May 10, 2001. The FMCSA is currently conducting a rulemaking on hours of service and supporting documents which would, *inter alia*, "clarify that motor carriers are currently required to retain all 'supporting documents' that all drivers (including independent contractors) receive during a trip" and thereby "resolve the confusion created by" *Ace Doran I* and *Ace Doran II*. Hours of Service of Drivers; Supporting Documents, 69 Fed. Reg. 63,997, 64,003-04 (Nov. 3, 2004) (proposed rules).

[7]We also note that CCI was on individual notice from previous enforcement actions that the FMCSA (and its predecessor, the Federal Highway Administration) required a carrier to maintain the toll receipts of owner operators. *See, e.g.*, *FHA v. CCI*, 1999 WL 33738402, at *2 & n.12 (May 27, 1999) ("Commodity Carriers had a duty to verify its drivers' logs" and to "compare[] the logs with the toll receipts," noting "[t]hat duty applies to owner-operator drivers as well as employee drivers").

For the foregoing reasons, the petition for review is denied.[8]

*So ordered*.

---

[8]In addition to the arguments addressed above, CCI contends FMCSA's interpretation of section 395.8(k)(1) is arbitrary and capricious based on "common knowledge in the industry" regarding drivers' trading or selling toll receipts. It fails, however, to cite record evidence of such practices. *See In re Sang Su Lee*, 277 F.3d 1338, 1345 (Fed. Cir. 2002) ("reference to common knowledge 'does not in and of itself make it so' absent evidence of such knowledge" (quoting *Smiths Indus. Med. Sys., Inc. v. Vital Signs, Inc.* 183 F.3d 1347, 1356 (Fed. Cir. 1999)); *cf. Chirino v. NTSB*, 849 F.2d 1525, 1527 (D.C. Cir. 1988) (relying on "common knowledge among pilots within the industry" regarding requirement of simulator training to obtain aircraft rating because agency "adduced evidence" before administrative law judge to support such knowledge).